UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ZIMMERMANN, INC. and        :
F. ZIMMERMANN GMBH,         :
                            :
        Plaintiffs,         :
                            :
        v.                  :    Case No. 2:11-cv-71
                            :
BARER ENGINEERING COMPANY OF    :
AMERICA, CENTRAL BEARING        :
CORPORATION LTD, d/b/a BARER    :
ENGINEERING COMPANY OF AMERICA, :
CENTRAL BEARING CORPORATION LTD, :
d/b/a BARER ENGINEERING         :
INTERNATIONAL, and DAVID BARER, :
                            :
        Defendants.         :
                            :

**MEMORANDUM OPINION and ORDER**

In this contractual dispute between sellers and distributors of manufacturing machinery, Plaintiffs Zimmermann Inc. and F. Zimmermann GmbH ("Zimmermann") have moved for partial summary judgment against Defendant Barer Engineering Company of America ("BECOA") on Count III of their Complaint, which alleges that BECOA breached a settlement agreement between BECOA and Zimmermann. The motion, ECF No. 21, is **denied**, for the reasons that follow.

**I.   Factual Background**

The following facts are undisputed, or taken in the light most favorable to BECOA, as the nonmoving party. In 2007 and 2008, BECOA issued various purchase orders to Zimmermann for manufacturing machinery and services related to BECOA's project

for the United States Military at Hill Air Force Base in Utah ("Hill Project").  BECOA made advance payments to Zimmermann for the machinery and services that Zimmermann agreed to provide.  To secure the advance payments, Zimmermann named "Barer Engineering International" as the beneficiary of a standby letter of credit issued by the Bank of Montreal.

From September 2, 2008, to August 13, 2009, Zimmermann sent BECOA several invoices for manufacturing machinery and services provided for the Hill Project totaling $261,064.00.  These invoices remain unpaid.

On May 21, 2009, BECOA drew on the letter of credit and obtained a disbursement in the amount of $526,017.70 as a performance guarantee on the Hill Project.

BECOA claims that it is entitled to use the amount owed Zimmermann on the Hill Project and the amount drawn on the letter of credit ("the Disputed Funds") to set off any liability to the United States Government as the result of a dispute concerning a project for the United States Defense Supply Center Richmond for equipment to be installed at the Naval Air Station in Jacksonville, Florida ("Government Dispute").  BECOA also claims that it is entitled to offset the costs it incurred and the losses it suffered as a result of Zimmermann's failure to deliver a machine that met the Government's requirements, which resulted in termination of the contract between BECOA and the Government.

On November 9, 2009, Zimmermann sent BECOA a letter demanding payment for the outstanding invoices by November 17, 2009.  In its November 13, 2009, response to the demand letter, BECOA claimed that Zimmermann in fact owed substantially more to BECOA than Zimmermann was owed from BECOA.  BECOA attached invoices setting forth the amounts it claimed Zimmermann owed. These included invoices for items ordered but not delivered; extra foundation work for the Hill Project; liquidated damages with respect to the Hill Project; legal expenses incurred in the Government Dispute; future legal expenses it expected to incur in the Government Dispute; and liability for the Government Dispute. All invoices bore a date of October 30, 2009.

On December 21, 2009, Zimmermann Inc. sued BECOA in Oakland County Circuit Court in the state of Michigan ("Michigan Litigation"), alleging breach of the Hill Project contract. BECOA removed the action to the United States District Court for the Eastern District of Michigan.  *See Zimmermann Inc. v. Barer Eng'g Co. of Am.*, No. 2:10-cv-10608-VAR-RSW (filed February 11, 2010).  On July 7, 2010, Zimmermann Inc. and BECOA stipulated to dismiss the Michigan Litigation without prejudice to its being re-filed in the District of Vermont.

On November 10, 2010, BECOA and Zimmermann entered into a Settlement and Release Agreement ("Settlement Agreement").  The parties agreed that resolution of the then-pending Government

3

Dispute would facilitate resolution of the parties' disputes.
The Settlement Agreement provided that "the Parties desire to
enter into an agreement as to the . . . issues between them
pending a final determination or resolution as to the Government
Dispute, and to do so without any admission of liability or legal
or financial obligation as to these issues . . . ."  Settlement
Agreement 3 (ECF No. 21-5).  The Settlement Agreement, among
other things, addressed the parties' claims arising out of the
Hill Project and the Government Dispute, and established
procedures for use of and repayment of the Disputed Funds, based
on various contingencies.

BECOA has been paid in full by the United States Military
for the Hill Project, admits that any disputes between it and
Zimmermann concerning this project have been resolved, and does
not dispute that it owes Zimmermann for the outstanding invoices
on the Hill Project.

Pursuant to the Settlement Agreement, Zimmermann agreed to
cooperate fully with BECOA with respect to litigation and/or
resolution of the Government Dispute, and did so.  The Settlement
Agreement also provided that "[t]o the extent [BECOA] is required
to pay monies to the Government as a result of a final
determination or settlement of the Government Dispute, BECOA
shall meet and confer with [Zimmerman] relative to utilizing the
Disputed Funds to satisfy [BECOA's] obligations to the

4

Government.   Settlement Agreement ¶ 4.   If the parties could not
agree on an amount of the Disputed Funds to be used to pay
BECOA's obligation to the Government, the parties agreed to
pursue mediation.   If the parties agreed upon an amount of the
Disputed Funds to be used to pay BECOA's obligation to the
Government, BECOA agreed to be obligated to repay to the Bank of
Montreal any Disputed Funds that remained, and to pay any further
remainder to Zimmermann.   *Id.*

On December 3, 2010, BECOA resolved the Government Dispute
and entered into a separate settlement agreement with the United
States Government that required BECOA to pay $100,000.00.   On
January 10, 2011, BECOA informed Zimmermann that it "need[ed] to
close with the Navy to settle the file.   Thereafter, we can
proceed together with you on the basis of the procedure which you
requested in the [Settlement Agreement]."   Jan. 10, 2011, E-mail
from David Barer to Matthias Tockook (ECF No. 21-8).   Zimmermann
agreed:   "O.K.   Lets [sic] do it that way.   Latest to the end of
the month we should make contact, or meet, and proceed from
there."   Jan. 10, 2011, E-mail from Tockook to Barer (ECF No. 21-
8).   On January 20, 2011, BECOA informed Zimmermann that it had
used Disputed Funds to make the settlement payment to the
Government, and offered to "discuss how to resolve matters
between ourselves at the end of the month."   Jan. 20, 2011 E-mail
from Barer to Tockook (ECF No. 21-8).   In a telephone conference

on January 28, 2011, BECOA's president David Barer took the
position that a complete resolution of the issues would require
Zimmermann to pay damages to BECOA apart from the $100,000.00
settlement with the Government.  Zimmermann Inc.'s president
Matthias Tockook did not agree to any more than $100,000.00 being
applied against the Disputed Funds.  The parties did not reach a
resolution.

On March 21, 2011, Zimmermann commenced this lawsuit,
alleging, among other things, breach of the Hill project
contracts; breach of the Settlement Agreement; and breach of an
implied covenant of good faith and fair dealing with respect to
the Hill Project and the Settlement Agreement.  BECOA has
counterclaimed among other things for breach of the contract
underlying the Government Dispute and breach of an implied
covenant of good faith and fair dealing.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a); *see Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286
(2d Cir. 2002) ("The party seeking summary judgment has the
burden to demonstrate that no genuine issue of material fact
exists.").  "'An issue of fact is genuine if the evidence is such
that a reasonable jury could return a verdict for the nonmoving

party.   A fact is material if it might affect the outcome of the suit under the governing law.'" *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).  "The evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Only when no rational jury could find in favor of the nonmoving party may summary judgment be granted to the moving party.  *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir. 1994).

## III. Discussion

Zimmermann contends that it is entitled to summary judgment on Count III of its Complaint, which alleges that BECOA breached the Settlement Agreement.  Essentially it argues that BECOA's failure to pay Zimmermann or the Bank of Montreal the balance of the Disputed Funds once it settled and paid its obligation to the Government was a breach of paragraph 4 of the Settlement Agreement.

BECOA acknowledges that it resolved its dispute with the Government on December 3, 2010, by promising to pay $100,000.00. It disputes whether the parties reached an agreement on the use of Disputed Funds as provided by paragraph 4 of the Settlement Agreement.  Zimmerman asserts that BECOA unilaterally decided to use $100,000.00 of the Disputed Funds to satisfy its settlement

obligation in the Government Dispute.  Its evidence is the
January 20, 2011 e-mail from Barer to Tockook stating that BECOA
had used Disputed Funds to make the settlement payment to the
Government.  BECOA characterizes this communication as a
statement of its intent to apply the $100,000.00 payment against
the Disputed Funds.  **cite  Barer decl.¶ 33**

When BECOA and Zimmermann attempted to resolve their issues
on January 28, BECOA claimed that the remainder of the Disputed
Funds were required to offset its losses, while Zimmermann
refused to agree to any more than the amount needed to satisfy
the settlement of the Government Dispute.  BECOA characterizes
this conversation as a failure to agree on the amount of the
funds to be used to satisfy BECOA's obligation to the Government,
triggering mediation;  **cite Barer Decl. ¶ 34-35** Zimmermann
characterizes this conversation as a refusal to agree to the use
of the Disputed Funds for anything more than that called for by
the Settlement Agreement, triggering a payout to the Bank of
Montreal and a payout to Zimmermann of the Disputed Funds minus
the $100,000.00.

In the Settlement Agreement the parties expressed their
"desire to enter into an agreement as to the aforestated issues
between them pending a final determination or resolution as to
the Government Dispute, and to do so without any admission of
liability or legal or financial obligation as to these issues

(except as otherwise provided for in this Agreement)."
Settlement Agreement 3.  The "aforestated issues" are detailed as
1) the "Michigan Litigation" for the payment of the Zimmermann
invoices totaling $261,064.00; 2) the "Government Dispute" where
BECOA contends that Zimmermann is responsible in whole or in part
for the payment of any monies to the Government; 3) the
legitimacy of BECOA's call on the Guarantee funds disbursed by
the Bank of Montreal, totaling $526,017.70; 4) whether BECOA may
retain the monies it owes to Zimmermann and the Bank of Montreal
totaling $787,081.70 "as an offset to liability that [BECOA] has
and/or may incur to the Government . . . ."  Settlement Agreement
2-3.

        The Settlement Agreement did not provide for BECOA to retain
the Disputed Funds for any purpose other than to "satisfy
[BECOA's] obligations to the Government."  Settlement Agreement ¶
4.  The Settlement Agreement specified that BECOA would pay its
own legal costs and would not deduct such amounts from the
Disputed Funds.  It provided that BECOA could pursue Zimmermann
for contribution and/or damages only "[t]o the extent the parties
cannot agree on the use of the Disputed Funds."  Settlement
Agreement ¶¶ 6, 7.

        Thus, whether either party breached paragraph 4 of the
Settlement Agreement turns on whether the parties agreed on an
amount of the Disputed Funds to be used to pay the settlement

amount for the Government Dispute, or whether the parties could not agree upon a certain amount of the Disputed Funds to be used for that purpose.

A reasonable, perhaps the most reasonable, interpretation of the facts presented concerning the January 28 conference is that the parties agreed that $100,000.00 could be retained to satisfy BECOA's obligation under the settlement with the Government, and the parties disagreed over whether BECOA had any right under the Settlement Agreement to retain any of the Disputed Funds to pay its costs and/or losses, a matter not contemplated by the Settlement Agreement.  This interpretation supports Zimmermann's contention that BECOA has wrongfully retained the remainder of the Disputed Funds.  It is not, however, the only reasonable interpretation.  Upon factual development at trial a reasonable jury may be persuaded that the conversation terminated in no agreement whatsoever, and that only in hindsight does Zimmermann maintain that it does not contest the use of $100,000.00 of the Disputed Funds to satisfy the settlement of the Government Dispute.

Accordingly, Zimmermann has not demonstrated that no rational jury could find in BECOA's favor concerning whether the parties agreed on an amount of the Disputed Funds to be used to satisfy the settlement of the Government Dispute, and summary

judgment on Count III is inappropriate.

Dated at Burlington, in the District of Vermont, this 31st day of October, 2011.

/s/ William K. Sessions III
William K. Sessions III
United States District Court Judge

11